<hr />

DAVID TOZER v. J. C. O'GORMAN and Others.[1]

January 17, 1895.

No. 9059.

**Receiver's Sale—Validity—Estoppel.**

> *Held*, that the part of the answer demurred to did not state facts sufficient to estop plaintiff from maintaining this action, for the reason that it is not alleged that, when he signed the bond referred to, he knew of the unlawful design of the defendants to violate the order of the court, or that the bond was intended to be used for any such illegal purpose. Hence the doctrine of pari delicto does not apply.

Action by plaintiff, as a stockholder of Seymour, Sabin & Co., and in behalf of the other stockholders of that corporation and all persons interested therein, against J. C. O'Gorman individually, and as receiver of said company, J. N. Searles, the Minnesota Commercial Company, and the Stillwater Union Depot & Transfer Company. J. C. O'Gorman individually, and as receiver, and J. N. Searles answered. The plaintiff demurred to the tenth and eleventh subdivisions of their answer. In the eleventh subdivision the defendants alleged nonpayment of the bond mentioned in the opinion; that the receiver had be-

[1] Reported in 61 N. W. 895.

gun an action against the makers, including this plaintiff, to compel payment; and the ability of plaintiff to pay the whole amount of the bond. The allegations of the tenth subdivision are stated in the opinion. From an order of the district court for Washington county, Crosby, J., overruling the demurrer, the plaintiff appealed. Reversed.

*J. N. Castle,* for appellant.

*J. N. Searles,* for respondents.

BUCK, J. This is an appeal from an order of the court below overruling plaintiff's demurrer to a part of the answer of the receiver and the defendant Searles. On May 12, 1884, the property of the defendant corporation Seymour, Sabin & Co. was duly sequestered under G. S. 1878 c. 76 § 9 (G. S. 1894, § 5897), and the defendant J. C. O'Gorman was appointed receiver thereof, who duly qualified and entered upon the discharge of his duties. A large amount of claims, aggregating about one million of dollars, was presented to the receiver against the Seymour, Sabin & Co. corporation, which corporation was insolvent. On August 9, 1888, upon proceedings duly had, the district court of Washington county made its order authorizing and requiring said receiver to sell all the property of said corporation in his hands at public vendue, which order explicitly provided the manner, terms, and conditions of the sale so to be made by the receiver, one of which conditions was that the successful bidder should deposit 20 per cent. of the amount bid with the receiver as evidence of his good faith, which sum was to be forfeited in case the bidder failed to complete his bid. This deposit was to consist of cash or such other security equal in value to said deposit of 20 per cent. The remainder of the purchase money bid by the successful bidder for such property, or any part thereof, was to be payable to the receiver at the time of the delivery or tender to the purchaser of the bill of sale or deed of the property purchased by him. The order also provided that the payment of the purchase money, or any part thereof, might be made to the receiver in the outstanding and unpaid certificates, if any, legally issued by the receiver at their par value, or in unsecured claims against the corporation allowed by the court if the purchaser of said property should be the holder and owner thereof absolutely or in trust, with authority to collect, with various other qualifications and conditions attached. All security taken from any purchaser by

the receiver at the sale, to secure the completion of his purchase, was to be redeemed by the purchaser in cash or its equivalent at the time of the tender to him of a deed or bill of sale, and the receiver was directed to make a report to the court without delay of his proceedings in regard to such sale, and no sale was to be valid until duly confirmed by order of the court. The attorney for the receiver was the defendant J. N. Searles.

It is alleged in the complaint that the receiver, on September 20, 1888, made a pretended auction sale of all the property held by him as receiver of said corporation, Seymour, Sabin & Co., to J. N. Searles, for the sum of $55,000, at that time the attorney for the receiver; that the receiver's proceedings in regard to the sale were reported by him to the court; that in such report it is stated that said J. N. Searles did upon said sale deposit with the receiver a sum equal to 20 per cent. of the amount bid by him,—said 20 per cent. consisting, however, of security equal in value to 20 per cent. of the bid—which the receiver held as deposit; and that the court confirmed the sale, and reiterated, in substance, its former order as to what might be received in payment in lieu of money, viz. receiver's certificates and good claims against Seymour, Sabin & Co. The court also, as part of its final order, decreed that "the said receiver, J. C. O'Gorman, is hereby authorized and directed to make, execute, and deliver to the said J. N. Searles, or such persons or corporations as he may direct, all necessary bills of sale, assignments, transfers, or conveyances of all and singular the aforesaid stock, property, things in action, effects, or other property of the defendant corporation, Seymour, Sabin & Co., upon the further and final payment to him, said J. C. O'Gorman, as receiver as aforesaid, by the said J. N. Searles, said purchaser, or others for him, all the remaining portion of the aggregate purchase price thereof, according to the amount agreed by the said J. N. Searles to be paid as aforesaid." For this purpose Searles was given 90 days, within which time he or those to whom he might transfer his interest might make payment in the manner authorized by the order of the court. It is further alleged in the complaint, and not denied, that without waiting the 90 days provided in the order of the court, and on October 24, 1888, the receiver, O'Gorman, at the request of said Searles, transferred all of this property so bid off to the Minnesota Commercial Company, a corpora-

tion organized under the laws of the state of Minnesota, without the receiver receiving one dollar in payment therefor, as provided by the order of the court or otherwise. It is also further alleged in the plaintiff's complaint "that after said sale and before said pretended conveyance $744.79 in money had been received as the proceeds of collection in the hands of said receiver, and except said amount no money whatever, or property of any kind authorized to be received as the proceeds of said sale or otherwise, was received by the said O'Gorman, as receiver or otherwise, and that all the property of said Seymour, Sabin & Co. was, in pursuance of said confederation, understanding, and agreement, wrongfully, fraudulently, and without consideration, save as aforesaid, transferred and delivered to said Commercial Company by said O'Gorman and said Searles. Neither said company nor said Searles paid anything, and save said sum of $744.79 said O'Gorman received nothing for the transfer and disposal of said property by said O'Gorman, assuming to act as receiver as aforesaid, to said Commercial Company."

There is very much more stated in the complaint tending to support the plaintiff's main cause of action, which we do not deem it necessary to quote, except that it is there alleged that the Commercial Company had notice of all these alleged facts, and was a party to the alleged confederation; that said company now has substantially all of the property it received from O'Gorman; that said property was substantially given to it by O'Gorman and Searles; that both are insolvent, and said Commercial Company was organized for the express purpose of becoming a party with O'Gorman and Searles, and becoming a beneficiary in the confederate scheme, by receiving the said property of Seymour, Sabin & Co. without consideration. The complaint demands judgment for an injunction; that the pretended sale of the property be declared void, and the Commercial Company compelled to restore it to the court; and for judgment against O'Gorman, Searles, and the Commercial Company for the value of the property, or such as cannot be restored to the court. The defendants answered, and the plaintiff demurred to the tenth and eleventh subdivisions of the answer. The court below overruled the demurrer, and this plaintiff appeals therefrom.

In the tenth subdivision of the answer, which is demurred to, it is alleged that "the defendant Searles delivered to the defendant

O'Gorman, as receiver, security for the twenty per cent. of the amount bid for said property, being a check of said J. N. Searles on the First National Bank of Stillwater, which one D. M. Sabin was to see paid by placing funds in said bank to the credit of said Searles sufficient to pay said check, but, before the same was paid or made good, the bond herein mentioned was executed and delivered; thereupon said check was returned to said Searles, and that said bid so made by said Searles was made originally for the benefit and advantage of one D. M. Sabin, either individually or for certain other persons with whom said Sabin was associated, and at the request of said Sabin, and as pure accommodation to said Sabin said Searles allowed his name to be used as bidder at said sale." The bond referred to was executed by D. M. Sabin, J. S. O'Brien, E. W. Durant, Samuel Matthews, Jacob Bean, and this plaintiff, David Tozer, to J. C. O'Gorman, as receiver, conditioned that, if the sale to Searles was confirmed, and O'Gorman would hold the property subject to be disposed of or dispose of it as Searles might direct, then they would pay O'Gorman the amount of the Searles bid. When this bond was executed, Searles consented to have the sale confirmed, relying upon said undertaking, and O'Gorman disposed of the property to the Minnesota Commercial Company or D. M. Sabin, which he would not have done had not the bond been so executed to him by the above-named parties, which bond has never been paid, but O'Gorman has brought suit thereon, the Minnesota Commercial Company not having paid for said property so conveyed or transferred to it.

It is apparent that the receiver was guilty of violations of the order of the court in regard to making the sale of the assets of the insolvent corporation. Aside from the impropriety of his own attorney being the purchaser at said sale, the payment of the purchase price of the property sold was not made in conformity to the order of the court, and in fact was never made. The property is now in the possession of the defendant Minnesota Commercial Company, which, plaintiff alleges, has practically no property save that in controversy. This company did not answer, and thereby admitted the allegations in the plaintiff's complaint. The property has passed from the possession and control of the receiver into the possession of an irresponsible company, and the receiver has no actual value or consideration for it. It is alleged that Seymour, Sabin & Co., O'Gorman, Searles,

and the Commercial Company are all insolvent, and yet property which was bid off, even under the adverse circumstances here stated, for the sum of $55,000 is under the control or in the possession of a company that cannot, or will not, or at least does not, pay for it. This unfortunate, if not precarious, condition of affairs has been brought about by reason of the receiver disobeying the order of the court in not collecting payment for the property when sold in the manner and according to the terms of the order. It seems to us that the policy pursued by the receiver and his attorney was a ruinous one, and tends to the destruction of the assets, and not to their conservation. A receiver should not and he cannot lawfully do any act in excess of his authority, and, if he does so act, he is responsible, and not the court. It needed no more than ordinary intelligence for him to understand that it was his official duty to follow the instruction of the court, and so marshal the assets of the estate, and apply the proceeds for the benefit of the corporate creditors. The whole transaction for the sale and purchase of the property was nothing but a colorable arrangement, and about such a transaction it is not to be presumed that the plaintiff has any knowledge, or that he in any way assented to it. If he in any manner acquiesced in this transaction, it is not alleged or claimed that he did so with a full knowledge of the facts, or with any knowledge of them. The answer nowhere alleges that the plaintiff knew or had any knowledge of the illegal acts of the receiver or his attorney, or that he in any way participated in the illegal transaction. Whatever motive may have prompted the plaintiff in signing the bond, whether as a mere matter of accommodation or otherwise, it does not appear that the receiver's illegal sale was any part of the inducement for plaintiff's so doing. Plaintiff had a right to assume that the receiver would discharge his duties, legally and faithfully.

The law applicable to the duties of a receiver in respect to the sale of property held by him as custodian is not intricate nor difficult of execution, and the law is much more easily executed when the order is explicit in the manner of its execution. That is the receiver's guide, and, if he disobeys or disregards it, he is amenable. Certainly, no one can be charged with notice that the receiver may or will disobey its explicit provisions; and, if he acts in violation of law or the order of the court, such acts are void. If the receiver had

discharged his duties faithfully and legally, a bond would never have been necessary or obtained for such purpose. But of this disobedience of the law and order of the court the plaintiff was ignorant, and did not participate in the transaction. This being so, his rights as plaintiff cannot be defeated simply because he signed a bond of the purport alleged. Whether that bond is a binding obligation we need not and do not determine. There ought to be some remedy for one or more creditors under such circumstances as these, and we think that such remedy exists in allowing such proceedings as plaintiff has commenced herein. Even if such a bond as the receiver took from the plaintiff and others can be upheld as valid, yet the great danger that might frequently attend its collection renders such a transaction very imprudent, and cannot be set up under such circumstances as these to justify a gross violation of a plain order of the court appointing a receiver, and defining and prescribing his duties. The original bond of the receiver for the faithful performance of his duty is only for the sum of $15,000, while this property was sold for $55,000, and is now in the possession of the purchaser, without its having paid the purchase price therefor. It is also alleged in plaintiff's complaint that the receiver is insolvent; that one of the bondsmen is dead; that two of them are insolvent, and only one remains against whom even the $15,000 can be collected. If, for any reason, the bond which the receiver took to secure himself should be held to be invalid, or the amount could not be collected, then there would remain assets of the insolvent corporation to the value, prima facie, of $40,000, without security for its payment or return. The disaster that may possibly arise fully justifies the plaintiff in bringing this action.

We hold that the order of the lower court in overruling the plaintiff's demurrer to part of the defendants' answer should be and is reversed.

CANTY, J. I concur in the result, on the ground that, assuming the complaint to be true, the order of confirmation of the sale was procured by fraud on the court, and that the same and the sale itself were a fraud on the creditors and stockholders of Seymour, Sabin & Co.; that, if plaintiff did not participate in that fraud, he is entitled to maintain the action; that it does not appear that he did partici-

pate in the fraud, or that, when he signed the bond in question, he knew that any fraud was contemplated, or that any order of the court was being disobeyed or evaded, or that he intended to aid in deceiving the court.