J. C. O'GORMAN, Receiver, v. D. M. SABIN and Others.[1]

July 10, 1895.

Nos. 9320—(153).

**Verdict Sustained.**

Evidence *held* sufficient to justify the verdict.

**Action by Receiver on Undertaking in Violation of Order.**

The plaintiff, as receiver of an insolvent corporation, was ordered by the court to sell all its property at public auction, and upon confirmation of the sale and the payment of the purchase money to execute to the purchaser the proper instruments of conveyance. After the sale, but before it was confirmed, the defendants executed to the receiver an undertaking whereby they promised and agreed that if, after the confirmation of the sale, he would transfer and deliver the property to the purchaser, or hold it in readiness to be so transferred and delivered, they would pay him the amount of the purchase money bid at the sale. After the sale was confirmed, the receiver, in reliance on this undertaking, but without authority from the court, and in violation of its order, transferred and delivered the property to the purchaser, without having received payment of the purchase money. *Held*, that the undertaking can be enforced by the receiver in his official capacity as an officer of the court, notwithstanding that the consideration for which it was executed was the doing of an act on his part which was in violation of the order of the court, and a breach of his official duty. His recovery is not in his own right, but in that of the court whose officer he is.

**Complaint—Amendment after Trial.**

After the trial, the plaintiff, by leave of the court, amended his complaint so that, instead of alleging that he accepted the undertaking in lieu of the purchase money due from the purchaser, it alleged that he accepted it as security that the purchaser would pay it. *Held*, that there was no error in allowing the amendment; that it did not change the cause of action, or raise any new issues; and that defendants were not entitled to a new trial on account of it.

[1] Reported in 64 N. W. 84.

Action in the district court for Washington county against D. M. Sabin, J. S. O'Brien, David Tozer, Samuel Matthews, E. W. Durant, and Jacob Bean, upon an undertaking alleged to have been executed by them. After trial and verdict in favor of plaintiff for $76,343.07, plaintiff by leave of court amended his complaint as stated in the opinion, and defendants interposed a demurrer to the amended complaint, which the court overruled. Defendants thereafter moved the court (1) to direct judgment for defendants for dismissal of the action, and for their costs and for such other relief as might be just; (2) to make its order and direct judgment sustaining the demurrer to the amended complaint; and (3) to vacate the general verdict and the special findings of the jury, and grant a new trial. The court, Williston, J., made an order granting a new trial unless plaintiff should consent to a reduction of the verdict to $75,280.61, but in case of such consent denying a new trial, and in other respects denying defendants' motions. Plaintiff consented to the reduction of the verdict. From the order denying their several motions defendants appealed. Affirmed.

*J. N. Castle,* for appellants.

The variance between the amended and the original complaint is fatal. O'Brien v. City of St. Paul, 18 Minn. 163 (176); Cowles v. Warner, 22 Minn. 449. The rule in regard to sureties is that the amount in gross mentioned in the bond is considered merely as a penalty, to cover any actual damages sustained by the party in whose favor the bond is given. Taylor v. Sandiford, 7 Wheat. 13; Jackson v. Baker, 2 Edw. Ch. 471; Hoag v. McGinnis, 22 Wend. 163; Dennis v. Cummins, 3 Johns. Cas. 297; Colwell v. Lawrence, 38 N. Y. 71; Wallis v. Carpenter, 13 Allen, 19, 25; 2 Am. & Eng. Enc. Law, 462, note 7; Shreve v. Brereton, 51 Pa. St. 175; Carter v. Strom, 41 Minn. 522, 43 N. W. 394; Fasler v. Beard, 39 Minn. 32, 38 N. W. 755. The contract of suretyship is construed strictly in favor of the surety. 24 Am. & Eng. Enc. Law, 749, § 9; Ryan v. Williams, 29 Kan. 487; Tomlinson v. Simpson, 33 Minn. 443, 446, 447, 23 N. W. 864; City of Lafayette v. James, 92 Ind. 240, 243, 244. Misrepresentation of material facts releases a surety from liability. Fishburn v. Jones, 37 Ind. 119; Drabek v. Grand Lodge, 24 Ill. App. 82, 84; Mendelson v. Stout, 37 N. Y. Super. Ct. 408; Frisch v. Miller, 5 Pa. St. 310; Ham v. Greve, 34 Ind. 18; Franklin

Bank v. Cooper, 36 Me. 179; 24 Am. & Eng. Enc. Law, 847. Sureties are entitled to subrogation. 24 Am. & Eug. Enc. Law, 847, 216, note 3; 217, 218; 223, note 2; Cullum v. Emanuel, 1 Ala. 23, 34 Am. Dec. 757; Hayes v. Ward, 4 Johns. Ch. 123; National Ex. Bank v. Silliman, 65 N. Y. 475, 479. A surety is released when the creditor parts with a lien for the payment of the principal debt without his consent. Baker v. Briggs, 8 Pick. 122, 126; New Hampshire Bank v. Colcord, 15 N. H. 119; Nelson v. Munch, 28 Minn. 314, 9 N. W. 863.

If a receiver exceeds his powers, his acts are void. High, Receivers, c. 1, § 1; Kerr, Receivers, 196; Edwards, Receivers, 4; Verplanck v. Mercantile Ins. Co., 2 Paige, 452, 453; Chautauqua County Bank v. White, 6 Barb. 589; Runyon v. Farmers' & Mechanics' Bank, 4 N. J. Eq. 480; Devendorf v. Dickinson, 21 How. Pr. 275; Hooper v. Winston, 24 Ill. 353; Yeager v. Wallace, 44 Pa. St. 294; Davis v. Gray, 16 Wall. 203, 217, 218; Booth v. Clark, 17 How. 322; Corey v. Long, 43 How. Pr. 492. Conveyance should not be made by the receiver till payment of the price. Barnes v. Morris, 4 Ired. Eq. 22; Ruckle v. Barbour, 48 Ind. 274. A sale without such payment is void. Chapman v. Harwood, 8 Blackf. 82; State of Wisconsin v. Torinus, 24 Minn. 332; Delafield v. State of Illinois, 26 Wend. 192, 221; Story, Agency, § 78; Cushing v. Longfellow, 26 Me. 306; Donovan v. Mayor of New York, 33 N. Y. 291; McSpedon v. Mayor of New York, 20 How. Pr. 395; Nash v. City of St. Paul, 11 Minn. 110 (174); State v. Hastings, 12 Wis. 664. Bonds taken by receivers contrary to authority are void. State of Wisconsin v. Torinus, supra; Ayer v. Hutchins, 4 Mass. 370; Reynolds v. Wilson, 60 Am. Dec. 753; Fisher v. Bridges, 77 E. C. L. 642; Hamilton v. Pleasants, 98 Am. Dec. 551; Paxton v. Popham, 9 East, 408, and note 414; Benedict v. Bray, 2 Cal. 251; Marshall v. State, 8 Blackf. 162; Daniels v. Barney, 22 Ind. 207; Bartee v. Tompkins, 4 Sneed, 623; Slocomb v. Robert, 16 La. 173; King v. Baker, 7 La. Ann. 570; Perry v. Hensley, 14 B. Mon. 381; Buckingham v. Bailey, 12 Miss. 538; Aucoin v. Guillot, 10 La. Ann. 124; Caffrey v. Dudgeon, 38 Ind. 512, 516; Alexander v. Silbernagel, 27 La. Ann. 557; Pacific Nat. Bank v. Mixter, 124 U. S. 721, 8 Sup. Ct. 718; State of Wisconsin v. Torinus, supra; Cressy v. Gierman, 7 Minn. 316 (398); Breen v. Kelly, 45 Minn. 352, 47 N. W. 1067.

*Warner, Richardson & Lawrence,* for appellants Durant, Tozer, and Matthews.

By his amendment of the complaint plaintiff substituted a new cause of action and waived the verdict. The obligation alleged in the amended complaint has one more condition annexed than was annexed to the obligation set out in the original complaint. State of Wisconsin v. Torinus, 28 Minn. 175, 9 N. W. 725; Benson v. Miller, 56 Minn. 410, 57 N. W. 943; Harrington v. Samples, 36 Minn. 200, 30 N. W. 671. The amended complaint and the verdict did not warrant judgment in favor of plaintiff, because it was not alleged and found that Searles was ever in default; and until such default the obligation of the sureties did not arise. The amended complaint did not allege that Searles was ever requested to pay his bid. Parr v. Johnson, 37 Minn. 457, 35 N. W. 176.

If the bond was obtained to protect plaintiff against loss from disobedience of the orders of the court, his action was fraud upon the court. Adams v. Adams, 25 Minn. 72; Belden v. Munger, 5 Minn. 169 (211). The scheme as testified to by plaintiff was not a mere private fraud, but a design to mislead the court. Livingston v. Ives, 35 Minn. 55, 27 N. W. 74; Tozer v. O'Gorman, 60 Minn. 42, 61 N. W. 895; G. S. 1878, c. 87, § 1, subds. 4, 5, 9; G. S. 1894, § 6155. Defendants are sought to be charged simply as guarantors and as being under obligation to pay on conditions that are not alleged to have been satisfied. Burke v. Baldwin, 54 Minn. 514, 56 N. W. 173; Guerin v. St. Paul F. & M. Ins. Co., 44 Minn. 20, 46 N. W. 138; Loomis v. Youle, 1 Minn. 150 (175); Cochrane v. Halsey, 25 Minn. 52, 61, 64. If the bond was to guarantee payment by Searles or his appointee of the balance of his bid at the time of the transfer, that is, as the orders required, defendants were sureties. By making the transfer without insisting on cash, plaintiff exonerated the sureties pro tanto. Franzen v. Mahon, 2 Minn. Law J. 216; Cummings v. Little, 45 Me. 183; Pollock, Contracts (251) 270; Otis v. Von Storch, 15 R. I. 41, 23 Atl. 39; 2 Sutherland, Damages, 562; Guild v. Butler, 127 Mass. 386; Ives v. Bank of Lansingburg, 12 Mich. 361; cf. Benson v. Miller, supra. If the bond was to guarantee payment by Searles of his bid at some time subsequent to the transfer, it was made to induce the receiver to disobey the orders of the court, and was illegal and void. If Searles and plaintiff

concocted this contrivance, and defendants executed the bond without knowledge of its real purpose, as shown by the evidence, defendants are not estopped. State of Wisconsin v. Torinus, 28 Minn. 175, 9 N. W. 725; Castle v. Thomas, 16 Minn. 443 (490); Hicks v. Mendenhall, 17 Minn. 453 (475); Farmers' & Mechanics' Bank v. Baldwin, 23 Minn. 198; First Nat. Bank v. Pierson, 24 Minn. 140; Kennett v. Chambers, 14 How. 38; Brown v. Tarkington, 3 Wall. 377; Davidson v. Lanier, 4 Wall. 447; Thomas v. Railroad Co., 101 U. S. 71; Pacific Nat. Bank v. Mixter, 124 U. S. 721, 8 Sup. Ct. 718; Central Transp. Co. v. Pullman's Palace-Car Co., 139 U. S. 24, 59, 60, 11 Sup. Ct. 478; Trist v. Child, 21 Wall. 441; Meguire v. Corwine, 101 U. S. 108; Chippewa Valley & S. R. Co. v. Chicago, St. P., M. & O. R. Co., 75 Wis. 224, 44 N. W. 17; Thomson v. Thomson, 7 Ves. Jr. 470; Cousins v. Smith, 13 Ves. Jr. 542; Pennsylvania Navigation Co. v. Dandridge, 8 Gill & Johns. 248; Converse v. Norwich Transp. Co., 33 Conn. 166; Hood v. New York & N. H. R. Co., 22 Conn. 502.

*Charles N. Bell* and *J. N. Searles*, for respondent.

As between Searles and defendants there was no relation of principal and surety. Defendants executed the undertaking without request from him. A voluntary payment or contract for payment by one for use of another without request will not create a liability on the part of the latter to the former. Lathrop v. Wilson, 30 Vt. 604; McPherson v. Meek, 30 Mo. 345; Carter v. Black, 4 Dev. & Bat. Law, 425; Hill v. Wright, 23 Ark. 530; Brandt, Suretyship, § 180; Mansfield v. Edwards, 136 Mass. 15; Brown v. Fales, 139 Mass. 21, 29 N. E. 211; Winsor v. Savage, 9 Metc. (Mass.) 346.

A judgment on the verdict before the amendment would bar another action on the obligation in suit. The obligation set out in the original and in the amended complaint was the same. Thompson v. Myrick, 24 Minn. 4; Harris v. Harris, 36 Barb. 88; Cromwell v. County of Sac, 94 U. S. 351. The defenses which defendants seek to avail themselves of by way of new trial are affirmative, and should have been pleaded. Livingston v. Ives, 35 Minn. 55, 27 N. W. 74; Finley v. Quirk, 9 Minn. 179 (194).

It was not necessary to make demand of payment on the bidder to give rise to defendants' liability. State v. Winona & St. P. R. Co., 21 Minn. 472; Horn v. Hansen, 56 Minn. 43, 57 N. W. 315; Snow

v. Johnson, 1 Minn. 32 (48). The obligation cannot be construed as postponing the time of payment till after conveyance. Horn v. Hansen, supra. If the obligation had run to Searles, it would have sustained an action by the receiver. Sanders v. Classon, 13 Minn. 352 (379). The consideration was expressed by the seal. Lawrence v. McCalmont, 2 How. 426. At common law, regardless of all orders of court, the obligation is valid, it being understood that it did not call for a conveyance before payment, because the subsequent conveyance, had it passed title, could not affect the obligation previously accrued. County of Appling v. McWilliams, 69 Ga. 840; Blain v. Hitch, 70 Ga. 275; St. Albans' Bank v. Dillon, 30 Vt. 122; Kelly v. Noyes, 43 N. H. 209; Sugars v. Brinkworth, 4 Camp. 46; Town of Stonington v. Powers, 37 Conn. 439; Miltenberger v. Cooke, 18 Wall. 421; Harris v. Runnels, 12 How. 79; Johnstons v. Meriwether, 3 Call, 523; Lartigue v. Baldwin, 5 Martin, 193; Humphreys v. McClenachan, 1 Munf. 493; Morse v. Hodsdon, 5 Mass. 314; Claiborne v. Debon, 2 Martin, 565; State v. Lynch, 6 Blackf. 395; Spader v. Frost, 4 Blackf. 190; Clap v. Cofran, 7 Mass. 98; Freeman v. Davis, 7 Mass. 200; Brandt, Suretyship, § 12. Where private interests only are concerned, a defense of illegality will not be entertained if it works a fraud on plaintiff. Edwards v. Trustees of Schools, 30 Ill. App. 528; Brooks v. Martin, 2 Wall. 70; Planters' Bank v. Union Bank, 5 Humph. 303; Daniels v. Tearney, 102 U. S. 415. Defendants in their testimony did not claim that the property was disposed of differently than they anticipated, and they are estopped from raising the defense of illegality. Columbia Electric Co. v. Dixon, 46 Minn. 463, 49 N. W. 244; Seymour v. Chicago G. F. Life Soc., 54 Minn. 147, 55 N. W. 907; Merchants' Nat. Bank v. Hanson, 33 Minn. 40, 21 N. W. 849; National Bank v. Matthews, 98 U. S. 621; Whitney Arms Co. v. Barlow, 63 N. Y. 62. If the contract is capable of a construction that will make it valid, that construction will be given. Curtis v. Gokey, 68 N. Y. 300; Hobbs v. McLean, 117 U. S. 567, 6 Sup. Ct. 870; United States v. Central Pac. R. Co., 118 U. S. 235, 6 Sup. Ct. 1038.

MITCHELL, J. The first thing necessary to the proper understanding of this case is to gather up out of the great mass of chaotic

record something like a concise and consecutive statement of the facts.

In May, 1884, the affairs of Seymour, Sabin & Co., an insolvent corporation, were placed in the hands of a receiver, under G. S. 1878, c. 76, § 9 (G. S. 1894, § 5897); the plaintiff in this action being appointed receiver.

August 9, 1888, the court made an order directing the receiver to sell at public auction all the assets of the insolvent corporation, and providing that the purchaser at such sale should deposit with the receiver, as security for the completion of his purchase, a sum equal to 20 per cent. of his bid, such deposit to be made in cash or other security of equal value (the remainder of the purchase money to be paid on delivery of the deed or bill of sale of the property by the receiver); that upon confirmation of the sale and the payment of the purchase money the receiver should execute to the purchaser the proper instruments of conveyance.

September 20, 1888, in pursuance of this order, the property was offered for sale and bid off for $55,000 in the name of J. N. Searles, who gave the receiver his check on the bank for $20,000 as earnest money or security for the completion of the purchase. As a matter of fact, he had no money to his credit in the drawee bank, and the check never was paid, but was afterwards returned to the drawer.

September 27, 1888, the receiver made his report of sale to the court, in which he reported that the property had been sold to Searles for $55,000, and that Searles had deposited with him $20,000 as security for the 20 per cent. required by the order of sale.

October 16, 1888, the defendant, as plaintiff alleges, executed to him the bond or undertaking upon which this action is brought, and to which reference will be made hereafter.

October 18, 1888, the court made an order confirming the sale and directing the receiver to execute the proper instruments of conveyance to Searles, or to such other persons or corporations as he might direct, upon further and final payment of the remainder of the purchase price according to the bid.

October 24, 1888, Searles having assigned all his interest under the bid to the Minnesota Commercial Company, the plaintiff, as receiver, executed to that company full and absolute conveyances and

transfers of all the property. But, outside of the paltry sum of about $750, the receiver has never received payment of any part of the $55,000 from either Searles, the Commercial Company, or any one else, and has received nothing in lieu of it as security for its payment, unless it be the alleged bond or undertaking upon which the suit is brought.

In the meantime this instrument has itself disappeared, and upon the trial secondary evidence of its contents was introduced.

In his complaint, as it stood during the trial, the plaintiff alleged that after report of sale, and after application had been made to the court for confirmation of the sale, but before it was confirmed, the defendants executed to him their joint and several undertaking and agreement, whereby they promised to pay to him the $55,000 bid for the property by Searles, if the sale should be confirmed and the plaintiff would transfer and deliver the property, or hold it in readiness to be transferred and delivered, to Searles or such other person or corporation as he might direct; that, after the confirmation of the sale, plaintiff, relying on this understanding, and having accepted it in lieu of the purchase money due from said Searles on said sale, conveyed and delivered the whole of the property to the Commercial Company at Searles' request. The original answer of the defendants consisted of a denial that they or any of them ever executed any such undertaking or agreement. In their amended answer they set up in extenso the order of sale, report of sale, and the order of confirmation, etc. Just what was the exact purpose for which this was done is not expressly stated in the answer, but it was undoubtedly to lay the foundation for the defense that, if any such undertaking was executed, it was void, and not enforceable, because given and accep ' 1 for an unlawful purpose.

Upon the trial the only issue of fact litigated was whether the defendants had ever executed any such undertaking. The contest was not over the particular terms or stipulations of the instrument, but whether defendants had executed to plaintiff any undertaking of any sort. The trial court, on its own motion, submitted to the jury three questions of fact which they were required to answer. The first and second merely went to the questions whether the defendants executed the undertaking described in the complaint, and, if some of them did, but not all, which of them did execute it. The answers

of the jury were to the effect that all of the defendants executed the instrument described in the complaint.    The third question and the answer to it were as follows: "Was said instrument so executed and delivered and by the plaintiff accepted as security that said J. N. Searles, in said complaint named, should complete his purchase of the property bid off by him at the receiver's sale in said complaint mentioned, or was the same so executed and delivered, and by said plaintiff accepted as and for a payment in full of the amount of such bid?" Answer.   "Said instrument was so executed and delivered as security that said J. N. Searles would complete his purchase of the property bid off by him at the receiver's sale in said complaint mentioned."   There was a general verdict for the plaintiff.

The various briefs in behalf of defendants contain nearly 80 assignments of error, but it is not necessary, and we do not feel called upon, to discuss them seriatim.   The fact is that, aside from a question of practice arising out of plaintiff's amendment to his complaint after trial, which will be considered hereafter, there are just two main questions in the case,—one of fact and one of law,—viz.: (1) Did the evidence justify the jury in finding that defendants executed an instrument of the tenor alleged?    (2) If so, is the instrument valid and enforceable, or is it invalid because executed and accepted for an unlawful purpose?

The evidence of the execution by defendants of an instrument of the tenor alleged is plenary.   The testimony of the scrivener who drew it, of the officer who took defendants' acknowledgment of it, of several parties who examined it before its disappearance, the subsequent conduct of defendants themselves indicating a consciousness of its existence and of their liability upon it, corroborated by circumstantial evidence tending to show, from the history of the scheme leading up to it, the reasonableness and probability of plaintiff's contention, constituted a mass of evidence that was well-nigh conclusive.   If the jury had found otherwise as to the defendant Sabin, who was the real principal and party in interest in the transaction, their verdict would have been perverse, for we construe his testimony as amounting to an admission that he executed the instrument.   His only attempt at a denial was in the form of a negative pregnant, that he did not execute the instrument on the day of its date, and the only way by which he attempted to support even

this denial was a very unsuccessful effort to prove an alibi on that day. The other defendants apparently had no interest in the purpose for which the instrument was executed, except as a matter of accommodation to Sabin. In view of the lapse of time, and the fact that most of them, according to their own testimony, were in the habit of frequently signing bonds for others for large amounts without making any record of it, or giving the matter any particular thought, or seeming to attach much importance to the liability which they were assuming, they may have forgotten this transaction, and now honestly believe that they never did sign this instrument. But their conduct when first advised of the claim which plaintiff made against them is very difficult to explain upon any other theory than that they were aware of having executed some such instrument. But, however that may be, the other evidence was ample to justify the verdict.

2. Is the undertaking valid? Can it be enforced by the plaintiff as receiver?

In considering the evidence as to the purpose for which this undertaking was executed, it would be idle for us to pretend not to see as a court what as men we can plainly read on almost every page of the record. It is perfectly evident that defendant Sabin was, from start to finish, the prime mover and principal actor in this transaction, and that the purpose for which this undertaking was given was to accomplish just what it did accomplish, viz. to secure a transfer or conveyance from the plaintiff, as receiver, of the assets of Seymour, Sabin & Co., without payment at the time of the $55,000 purchase money. This, if not expressly stated, was necessarily implied from the terms of the instrument itself. If this was not its purpose, it had none; for if the purchase money was paid down on delivery of the conveyance, there was no possible use for such a bond. Sabin's plan was to purchase the assets of Seymour, Sabin & Co. at the receiver's sale, and then turn them over, with other property, to the Commercial Company, which he, with others, contemplated organizing for that purpose, and then have that company issue a large amount of bonds, secured on the property, which they expected to negotiate in the East. The plaintiff was evidently more or less cognizant of Sabin's plans, and at that time friendly to him. Searles was Sabin's attorney in the matter, and although he made

the bid in his own name it was in fact made for Sabin, at whose instance the property was afterwards conveyed by the receiver to the Commercial Company. When this was done, Sabin's expectation may have been to pay the purchase money out of the proceeds of the bonds of that company which were expected to be issued, or he may have expected to secure the allowance of claims which he held or controlled against Seymour, Sabin & Co. sufficient to offset it. But, if so, neither has been done, and the fact remains that he and those associated with him have got the entire assets of Seymour, Sabin & Co. without paying a dollar for them. But, whatever the details of the scheme may have been, the purpose for which the bond was given was to secure from the receiver a conveyance and transfer of the property without having to pay down the purchase price, and that purpose was accomplished. This, if not invalid for illegality, constituted a sufficient consideration for defendants' undertaking.

Plaintiff's counsel contend that there is evidence that the court was advised of the matter, and gave its oral consent to plaintiff's accepting this undertaking and waiving present payment of the purchase money. We should not be warranted in concluding that the court modified its order of sale in any such unjudicial manner, especially as the terms of the order of confirmation are directly opposed to any such assumption. The case must therefore be considered on the assumption that the receiver had no authority to accept this bond, either in lieu of or as security for the purchase money, and that in doing so, and transferring the property without actual payment of the purchase price, he acted in direct violation of the orders of the court whose officer he was.

The question is, under such circumstances, can he, in his official capacity, enforce the undertaking? We have not been referred to, neither have we found, any case of similar facts. It will be observed that the illegality, if any, is not inherent in the promise or undertaking itself, but lies in the purpose or object for which it was made. Again, the act of plaintiff which the undertaking was intended to secure was not criminal or immoral, but merely unauthorized by, and in violation of, the orders of the court which had appointed him. The fraud or wrong was on the court itself, which had possession of the property, and consisted in depriving it of that possession without receipt of the purchase money, which, if re-

ceived, would also have been in possession of the court; for the possession of the receiver is the possession of the court whose officer he is. Moreover, plaintiff is not suing in his own right, but in his official capacity as an officer of the court; and a recovery by him will be, in effect, a recovery by the court itself. We are of opinion that the fact that the act of the plaintiff, in accepting this undertaking and transferring the property without payment of the purchase price being first made, is no defense to an action on the undertaking by plaintiff in his official character as receiver. It does not lie in the mouths of the defendants, after having, by means of this undertaking, induced the receiver to violate the orders of the court, whereby it has been deprived of the property or its proceeds, to say that the court, through its officer, cannot enforce the undertaking, because the act of the receiver, which it was designed to induce, was illegal in the sense of being in violation of the orders of the court. The fact that the receiver is personally liable for his unauthorized act, or that the property or its value might be recovered from the Commercial Company, if it is pecuniarily responsible, does not alter the case. The court in the assertion of its rights to the property or its proceeds is not put to any such election.

There was nothing decided in Tozer v. O'Gorman, 60 Minn. 42, 61 N. W. 895, at all in conflict with this view. That was an action by Tozer, as a creditor of Seymour, Sabin & Co., against O'Gorman, Searles, the Commercial Company, and others to set aside the sale of the property to the Commercial Company, and to compel it to restore or account for the property, and for judgment against Searles and O'Gorman on the ground that they had unlawfully conspired together to have the property transferred to the Commercial Company without payment of the purchase money, in violation of the order of the court. One of the defenses attempted to be interposed was that Tozer was estopped to question the validity of the transaction, because he had joined in the execution of the bond now in suit for the very purpose of inducing the acts of which he was then complaining. An order overruling a demurrer to this defense was reversed on the ground that it did not appear from the answer that Tozer participated in the alleged fraud on the court, or that, when he signed the bond, he knew that any fraud was contemplated, or that he intended to aid in deceiving the court. Moreover, that was

an action between the parties in their individual or personal ca-
pacity.

3. The only other question of importance grows out of the mon-
grel and irregular practice which obtained after trial.   After trial,
the plaintiff, by leave of the court, and probably in view of the spe-
cial finding of the jury, amended his complaint so that, instead of
alleging that he accepted the undertaking of defendants in lieu
of the purchase money due from Searles on the sale, it alleged that
he accepted it as security that Searles would complete his pur-
chase.   It will be observed that neither the special finding of the
jury nor the amendment of the complaint go to the tenor of the
undertaking, but merely to the purpose for which it was executed
and accepted; and we are unable to discover the materiality, under
the issues, either of the special finding or of the amendment.   The
latter was doubtless made with a view of having the complaint con-
form to the proof and the special finding.   That the court had a
right to allow such an amendment, and that the allowance of it
would not entitle defendants to a new trial of the action, are prop-
ositions that seem too elementary for discussion.   The court did
not grant any new trial, but, on the contrary, denied defendants' mo-
tion for one.   That ought to have been the end of the matter.
But, nevertheless, defendants interposed a demurrer to the amended
complaint, which the court overruled; and its action in overruling
the demurrer, as well as in allowing the amendment to the com-
plaint, and, in view of that amendment, in denying a new trial, is
sought to be reviewed on this appeal.

It is urged that the amendment substituted an entirely new cause
of action, to which defendants would have had a defense which
they were under no duty to interpose to the cause of action set up
in the original complaint, to wit, that, if they executed the under-
taking as mere sureties for Searles, then they were released by the
act of plaintiff in transferring the property without receiving pay-
ment of the purchase price.   To this there are several answers:
First, the amendment, as already suggested, does not change the
cause of action at all.   Second, if the fact was that the defend-
ants' undertaking was executed merely as security for Searles, the
defense now suggested was just as available, and it was as much
the duty of the defendants to interpose it, under the original as un-

der the amended complaint. Moreover, it was a defense that should have been specially pleaded. But no such defense was even suggested. The defendants stood exclusively upon the defenses: (1) that they never executed any such instrument for any purpose; (2) but, if they did, it was void. It may also be added that if the undertaking was executed, as it evidently was, to secure a transfer of the property to the purchaser in advance of payment of the purchase money, there is nothing in the defense; for defendants cannot complain because the plaintiff did what the undertaking was designed to induce him to do.

The other assignments of error all relate to the rulings of the court in the admission or exclusion of evidence. They are very numerous. While we have examined them all, we do not feel called on to say much more than that we find no prejudicial error. The inquiries took quite a wide range on both sides, as was perhaps necessary in view of the nature of the case. The question was the execution or nonexecution of the instrument sued on. The defendants all denied its execution. Any words or acts of any of them amounting to an admission, express or implied, that they or he had executed such an instrument was clearly admissible. Under the circumstances, evidence relating to the history of the transaction, and of the relations of the parties to it, legitimately bearing upon the probability and reasonableness of plaintiff's claim that such an instrument was executed to him, and that he transferred the property in reliance on it, was competent circumstantial evidence. Under one or other of these general grounds, almost all the evidence of the admission of which defendants complain was properly admitted.

Order affirmed.